POSITIVE SOFTWARE SOLUTIONS INC., Plaintiff,

v.

NEW CENTURY MORTGAGE CORP., et al., Defendants.

No. CIV.A. 303CV0257N.

United States District Court,
N.D. Texas,
Dallas Division.

May 2, 2003.

---

W. Ralph Canada, Jr., Shore Deary, Dallas, TX, for plaintiff.

Barry C. Barnett, Ophelia F. Camina, Susman Godfrey, Dallas, TX, for defendants.

### ORDER

GODBEY, District Judge.

Before the Court are Positive Software Solutions Inc.'s ("Positive Software") motion to lift stay for limited purposes, motion to reconsider non-signatory defendants' motion to compel arbitration, motion to reconsider the Court's ruling denying the second emergency motion to compel regarding imaging, motion to modify the Court's April 29, 2003 Order, motion to strike pleadings, and request for oral argument and clarification.

Many of Positive Software's concerns deal with possible spoliation. The Court takes spoliation very seriously. The Court is confident that an arbitrator would also take spoliation very seriously. Positive Software's motion to strike pleadings falls within the scope of the Court's stay and the Court will defer to the arbitration process on that point. To ensure no other potentially relevant information is deleted before arbitration commences, the Court ORDERS Defendants to preserve all extant backups or images of all servers or personal computers that now or previously contained any portion or part of Loan-Force, LoanTrack–1, LTKMoon, LFMoon, LoanTrack–2, or MLAS, and any associated software, whether used for development, debugging, deployment, production or otherwise, including source code, object code, history or log files, or revision tracking files (particularly including any backups of servers or personal computers from which files were deleted under the direction of Dr. Pooch), and to refrain from deleting any such files still resident on any servers or personal computers, and to preserve all extant backups or images of all e-mail servers, pending further order of the Court or directive of the arbitrator.

Positive Software also complains that its request to image servers is not overbroad, contrary to the Court's Order. The Court acknowledges that Positive Software's second emergency motion to compel somewhat limited the universe of servers to be imaged; it nonetheless still sought imaging "of all of Defendants' media potentially containing any of the software and electronic evidence relevant to the claims in this suit" and "all images of [Defendants'] computer storage facilities, drives, and servers taken to date." Plaintiff's Second Emergency Motion at 1, 9. Positive Software also forgets the broad scope of imaging, concisely explained in Plaintiff's [first] Emergency Motion to Compel at 2. Imaging would include not only the files at issue, but also anything else that happened to be on a server containing one of those files, which could in-

clude irrelevant or privileged information not otherwise discoverable, possibly even including deleted files. The Court remains of the opinion that the scope of the proposed imaging is substantially overbroad.

■ Positive Software further complains that the Court has given an overly broad role for arbitration in this case. The Court respectfully believes it has simply acknowledged the large role for arbitration provided by Congress and by the contract that Positive Software drafted. That contract provides both for arbitration and, in limited circumstances, for preliminary relief from a court; this Court's reading of those two provisions was that the parties intended to enable Positive to seek interim relief to preserve the status quo and protect intellectual property rights that might be irreparably harmed before arbitration could address the issue. That construction is consistent with the case law on the role of preliminary injunctions in connection with arbitration. · See, e.g., *RGI, Inc. v. Tucker & Assoc.,* 858 F.2d 227, 230 (5th Cir.1988); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chapman,* 1998 WL 792501, *1, 1998 U.S. Dist. LEXIS 17896, *2 (N.D.Tex.1998); *Speedee Oil Change Sys., Inc. v. State Street Capital, Inc.,* 727 F.Supp. 289, 291–92 (E.D.La. 1989). Moreover, Positive Software's opposing construction—it can go to court as of right anytime something can be characterized as a preliminary injunction—would largely eviscerate the arbitration provision.

Positive Software's current request to expand the record is not just an offer of additional evidence on the issues presented in its original application for preliminary injunction. Rather, it is essentially an all-new application for preliminary injunction, shifting the focus from LoanTrack–1 to LoanTrack–2 and MLAS. The Court does not fault counsel for changing their target as new facts develop and are discovered, but that change should be understood as a new application for preliminary relief, not just some new evidence on arguments already before the Court.

The Court notes that the situation now is different than when Positive Software originally sought preliminary relief from the Court. Positive Software's original position before the Court was that Defendants had combined Positive Software's software with some of their own software in an awful Frankensteinian monster for a transition process that must be stopped before its May conclusion. Also at that time, the contested motion to compel arbitration was pending. Under those circumstances the Court believed it appropriate to consider injunctive relief pending resolution of the arbitration question.

The circumstances now are materially different. LoanTrack–2 and MLAS are apparently not some kind of hybrid with LoanForce; there is no time-sensitive transition period coming to an end; the motion to compel arbitration is now decided and not pending; and the relief sought would not preserve the status quo pending arbitration, but would dramatically change the landscape in ways that would likely render the arbitration moot. Accordingly, the Court stands by its prior ruling on the scope of the subject matter of the preliminary injunction.

■ Positive Software complains that its claims against the non-signatories are entirely separate and different from its claims against New Century Mortgage and should not be sent to arbitration. When most of the non-signatories moved to dismiss Positive Software's claims against them for lack of personal jurisdiction, Positive Software opposed that motion, arguing that the claims as alleged in its complaint were that all of the Defendants engaged in a single course of conduct, and indeed, that New Century Mortgage was nothing more than a tool through which New Century Financial operated. The Court agrees

with that characterization of Positive Software's complaint: all Defendants acted together in a single course of conduct that allegedly breached the Software Subscription Agreement, as well as allegedly violated various of Positive Software's intellectual property rights in the software. The second circumstance of *Grigson,* if it means anything, must encompass such claims. Accordingly, the Court stands by its prior ruling regarding which parties should be compelled to arbitrate.

Finally, Positive Software requests clarification of the Court's Order permitting limited discovery pending commencement of the arbitration. As stated in the Order, the last deposition will be completed after five hours of testimony, beginning on May 16, 2003, at 9:30 a.m., unless the parties agree otherwise. No subpoena duces tecum was contemplated. No Rule 26 disclosures were contemplated. Except for that discovery, everything else in the case (including other discovery) is stayed.

Except as expressly provided above, all other relief requested in the stated motions is denied.